**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 66, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-05-2411 |
| CENTERPOINT ENERGY HOUSTON ELECTRIC, LLC, (RELIANT ENERGY HL&P), | § § § § § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This suit seeks judicial review of an arbitrator's decision rejecting a grievance filed by the International Brotherhood of Electrical Workers, Local Union No. 66 ("Union") on behalf of Roderick Peavy, an employee of defendant, CenterPoint Energy Houston Electric, LLC ("CenterPoint"). Peavy was a head lineman who was demoted to a helper's position. The arbitrator found Peavy was not entitled to continue to receive a lineman's rate of pay while working as a helper or to receive "longevity pay" under the collective bargaining agreement. In this suit, the Union challenges this award as exceeding the arbitrator's authority under the collective bargaining contract. CenterPoint moves for summary judgment that the award was within the arbitrator's authority. The Union cross-moves for summary judgment that the award is invalid. Based on a careful review of the pleadings, the motions,

the summary judgment record, and the applicable law, this court grants CenterPoint's motion for summary judgment, denies the Union's motion for summary judgment and, by separate order, enters final judgment. The reasons are set out below.

**I.     Background**

In 2001, CenterPoint implemented Weight-Restricted Equipment Guidelines that required linemen – who use "bucket trucks" to access overhead equipment – to weigh no more than 280 pounds.[1] Under the Policy, an employee was allowed 90 days after the effective date to meet the weight restriction. An employee failing to do so could be placed on unpaid status for 30 days. At the end of that period, employees who still weighed more than 280 pounds were offered an opportunity to be demoted to a newly- created transitional helper classification – which was not subject to the weight limit – or lose their jobs. An employee was allowed to return to the former position if he lost the weight within a year. If the employee was unable to meet the weight limit at the end of one year, he would be moved to a helper position and pay rate.

Peavy was a head lineman. These employees enjoyed the highest hourly classification under the collective bargaining agreement. In November 1991, he weighed over 280 pounds.

---

[1] Bucket trucks allow employees to work on power lines and transformers from the bucket, without requiring them to physically climb the poles being serviced. The arbitrator found that CenterPoint issued weight-restricted equipment guidelines for employees using the bucket trucks in response to government safety regulations and manufacturer equipment specifications that included maximum weight limits for employees using bucket trucks. A majority of the buckets could withstand a maximum of 300 pounds each. CenterPoint set the weight restriction for an employee who used bucket trucks at 280 pounds fully dressed, allowing 20 pounds for tools and other equipment. (Docket Entry 15, Ex. B, ¶ 12).

Peavy had a choice among three alternatives: termination after a 30-day unpaid leave if the weight limit was still not met; finding another job in the company, not subject to the weight restriction, for which he was qualified; or a demotion to the classification of transitional helper, at a lower pay rate than a head lineman. Peavy accepted the demotion.

Under the policy, Peavy could have returned to the lineman position if he lost the necessary weight. If he failed to do so within a year, however, he would be demoted again, to the position of helper, the lowest hourly classification under the collective bargaining agreement. At the end of a year, Peavy still exceeded the weight limit. He accepted a demotion to the helper position. In January 2003, Peavy's employment was terminated as part of a larger reduction-in-force. The Union filed a grievance, challenging Peavy's demotion and lower pay, CenterPoint's failure to pay "longevity pay," and Peavy's job termination. After a hearing, the arbitrator found in CenterPoint's favor on all these issues.

This lawsuit challenges the arbitrator's findings on CenterPoint's refusal to pay Peavy a lineman's pay rate and "longevity pay" after the demotions. The Union contends that under Article 6, Section 2 of the CBA, CenterPoint was required to continue to pay Peavy at the lineman's rate, even after he was demoted to a helper position. The Union also contends that Peavy should have received "longevity pay" after his demotions, under Article 15, Section 6 of the collective bargaining agreement. In this suit, the Union contends that the arbitrator ignored the express language of the CBA in finding that Peavy was not entitled to lineman pay or longevity pay, making the award exceed his contractual authority. CenterPoint contends that the arbitrator's decision was consistent with the CBA.

## II.     The Applicable Legal Standards

Cases that involve an assertion of rights under an agreement between an employer and a labor organization arise under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a).  *Major League Baseball Players Assoc. v. Garvey*, 532 U.S. 504, 509 (2001); *Int'l Chem. Workers Union, Local 683C of the United Food & Commercial Workers AFL-CIO v. Columbian Chems. Co.*, 331 F.3d 491, 494 (5th Cir. 2003).  "[W]hen reviewing a case involving a [collective bargaining agreement (CBA)] and arising under Section 301, courts are not obligated to rely on the [Federal Arbitration Act], but may rely on it for guidance in reviewing an arbitration award."  *Int'l Chem. Workers Union*, 331 F.3d at 494 (citations omitted); *see also United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 41 n.9 (1987) ("[F]ederal courts have often looked to the [FAA] for guidance in labor arbitration cases."); *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 352 n.2 ("[C]ourts, in interpreting LRMA cases, have cited to FAA cases and the courts interpreting FAA cases have cited to LMRA cases.").

Review of an arbitration award under "both the LMRA and the FAA remains extraordinarily narrow."  *Int'l Chem. Workers Union*, 331 F.3d at 495.  Under the FAA:

> [A] district court may vacate an award only if : (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers.  An additional ground for vacating an arbitration award is that in making the award the arbitrator acted with "manifest disregard for the law."

*Id.* (quoting *Harris*, 286 F.3d at 792).

In reviewing an arbitration award under a collective bargaining agreement, a court must defer to the arbitrator. *Int'l Chem. Workers Union*, 331 F.3d at 494–95. The scope of review is "extremely limited." *Weber Aircraft, Inc. v. General Warehousemen & Helpers Union Local 767*, 253 F.3d 821, 824 (5th Cir. 2001). When a collective bargaining agreement stipulates that the parties will submit a dispute to arbitration, "an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract." *Misco*, 484 U.S. at 37–38. "It is only when the arbitrator strays from interpretation and application of the agreement and effectively 'dispenses his own brand of industrial justice' that his decision may be unenforceable." *Garvey*, 532 U.S. at 509 (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). The party moving to vacate an arbitration award has the burden of proof. *Lummus Global Amazonas S.A. v. Aguaytia Energy Del Peru, S.R. LTDA*, 256 F. Supp. 2d 594, 604 (S.D. Tex. 2002).

**III.   Analysis**

After the hearing in this case, the arbitrator issued a seventeen-page opinion, setting out the parties' positions, the evidence, and findings and conclusions. The arbitrator found and concluded that Peavy's weight made him unfit to perform an essential job duty – using a bucket to gain access to lines because he exceeded the allowable maximum weight for a bucket – and that CenterPoint had a right to terminate his employment because he failed to correct the condition that made him unfit. (Docket Entry No. 15, Ex. B, ¶¶ 16, 23). The arbitrator concluded that CenterPoint had the right to terminate Peavy's job, but instead

5

allowed him the option to take a 30-day unpaid leave and reduce his weight to below the limit, or to take the Transition Helper position at a lower pay rate. The arbitrator found that Peavy voluntarily accepted a demotion to a helper position rather than accepting a 30-day unpaid leave that would have allowed him to retain his Journeyman Lineman position if he had met the weight limit. (*Id.*, ¶ 18).

The Union's sole argument for vacating the award is that the arbitrator exceeded his authority by denying Peavy's claim that he was entitled to continue to be paid at a lineman's rate and to receive "longevity pay." An arbitrator's authority is derived from the arbitration agreement. Arbitrators exceed their authority when they decide matters the agreement does not place before them. *See Beaird Indust., Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 944 (5th Cir. 2005) (citations omitted). In this case, the arbitrator examined the following issues:

> 1. Is the Grievant entitled to a remedy as a result of the implementation of WREG? If yes, what is the remedy?
>
> 2. Was the Grievant's loss of longevity pay a violation of the CBA?
>
> 3. Did the Company violate the Agreement through implementation of the January 1, 2003 Reduction in Force?

(Docket Entry No. 15, Ex. B, p. 2). The Union does not argue that the arbitrator should not have decided any of these issues. The Union argues only that the arbitrator did not decide the issues correctly. The arbitrator limited his opinion to deciding these issues.

Arbitrators also exceed their authority when they act "contrary to express contractual provisions." *Houston Lighting & Power Co. v. Int'l Brotherhood of Electrical Workers, Local Union No. 66*, 71 F.3d 179, 182 (5th Cir. 1995). The Union argues that the arbitrator

ignored two portions of the CBA, Article 6, Section 2, and Article 15, Section 6.

Article 6, Section 2, is entitled "Apprentices." It provides: "Upon successful completion of the [Apprentice] Program, Company agrees that the Apprentice shall be retained as Journeyman, and receive the salary therefore." (Docket Entry No. 15, Ex. A, p. 6). The Union contends that because Peavy had completed the Apprenticeship Program, he could not be reclassified as a Helper, but instead had to "retain" his classification as a lineman and receive a lineman's rate of pay. In the arbitration, the parties disputed the meaning of the word "retained" in Article 6. CenterPoint argued that it meant "hired," while the Union argued that it meant indefinite continued employment. The arbitrator interpreted Article 6 in the context of the management rights clause of Article 3 and in light of the fact that the CBA provides procedures for the termination or demotion of a Journeyman Lineman. (Docket Entry No. 15, Ex. B. ¶ 24). The management rights clause provides: "The Company shall have the exclusive right to determine its operating policies and manage its business in the light of experience, business judgment and changing conditions consistent with the terms and conditions of this Agreement. The Company shall retain all right, power and authority not specifically relinquished in this Agreement." (Docket Entry No. 15, Ex. A, p. 4). Article 15, Section 6, addressed a Head Lineman's demotion. Reading all of these provisions of the CBA together, the arbitrator concluded:

> It would not be reasonable to a person using common sense to conclude that an employee who was unfit to perform at a Journeyman level should nonetheless continue to be paid at that level. The Grievant voluntarily accepted a Helper position in lieu of termination and it w[as] reasonable for management to pay him at a Helper level rather than a higher Journeyman rate.

(Docket Entry No. 15, Ex. B, ¶ 24).

The CBA does not state that once an employee completes the apprentice training, that employee is entitled to be a lineman indefinitely, regardless of compliance with safety regulations or qualifications for the job. Such a reading fails to take into account other provisions of the CBA, including Article 7, which places exclusive responsibility for establishing safety regulations and operating practices with CenterPoint; Article 15, Section 6, which allows CenterPoint discretion to promote or demote Head Journeymen, giving consideration to factors that include "qualifications"; and the general rules of conduct, which require employees to be in physical condition to work and to observe all safety regulations. The arbitrator did not exceed his authority when he decided that CenterPoint was entitled to allow Peavy to choose demotion rather than termination and to pay Peavy the rate of pay that accompanied the new position, not the position he was no longer eligible to hold.

The arbitrator also rejected the Union's argument that Peavy was entitled to "longevity pay" under Article 15, Section 6. That provision states:

> A Head Journeyman may, at his discretion, request removal from that position at anytime and thereafter he will be returned to the rate and classification held prior to being made Head Journeyman with neither loss of seniority nor other prejudice.
>
> In the event a permanent Head Journeyman is demoted and replaced at the Company's discretion, he will retain the rate he was receiving as Head Journeyman for a period of time equal to one (1) month for each full year of his service as a Head Journeyman up to a maximum of twelve (12) months of rate retention.

(Docket Entry No. 15, Ex. A, p. 23). The parties disputed whether Peavy was removed from

his position as a Journeyman "at the Company's discretion," in which case he should receive one year's pay at the Journeyman rate, or voluntarily, in which case the CBA does not provide for continued pay at the Journeyman rate. The arbitrator concluded that, because Peavy was "unfit to perform at a Journeyman level" because he could not meet the weight restriction, CenterPoint was free to terminate his employment, but that Peavy had "voluntarily accepted a Helper position in lieu of termination." (Docket Entry No. 15, Ex. B, ¶ 24). As a result, the arbitrator concluded that under the CBA, Peavy was not entitled to longevity pay.

The arbitrator did not substitute his judgment for the language of the CBA. The CBA provides that "[t]he sole function of the arbitrator shall be to determine whether Company or Union is correct with reference to the proper application and interpretation of this Agreement and the arbitrator shall not have any authority to change, amend, modify, supplement or otherwise alter in any respect whatsoever this Agreement, or any part thereof." (Docket Entry No. 15, Ex. A, p. 27). The arbitrator interpreted and applied the CBA. His decision "draws its essence from the collective bargaining agreement." *United Steelworkers*, 363 U.S. at 597. "As long as the arbitrator's decision draws its essence from the collective bargaining agreement and the arbitrator is not fashioning his own brand of industrial justice, the award cannot be set aside." *Weber Aircraft*, 253 F.3d at 824 (internal quotations omitted). A court must affirm the award "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Id.* (internal quotations omitted). This is true even if a court believes the arbitrator "committed serious

9

error." *Garvey*, 532 U.S. at 509. "When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." *Id.* (quoting *Misco*, 484 U.S. at 39). A court has "no business weighing the merits" of a grievance or "considering whether there is equity in a particular claim." *Int'l Chem. Workers Union*, 331 F.3d at 496 (quoting *Garvey*, 532 U.S. at 509).

This case is far different from *Houston Lighting & Power*, 71 F.3d 179, in which the arbitrator did exceed his authority. The arbitrator found that the employer was not justified in laying off an employee. The arbitrator evaluated the employee's qualifications and calculated the employee's performance rating in deciding that the layoff was unjustified. The appellate court noted that the CBA between the Union and the employer gave the employer the right to determine the employee's ability, skill, and qualifications, subject to an employee's right to assert a grievance. *Id.* at 184. By performing his own evaluation, the "arbitrator went beyond the scope of his authority, and beyond the parties' contractual agreement." *Id.* In the present case, by contrast, the arbitrator confined himself to interpreting the CBA as a whole and applying it to the evidence. There is no basis to find that he exceeded his authority.

### III. Conclusion

This court finds no basis to vacate the arbitration award. The motion for summary judgment filed by the International Brotherhood of Electrical Workers Local Union No. 66 is denied. The motion for summary judgment filed by CenterPoint Energy Houston Electric,

LLC is granted. The motion to dismiss is denied as moot. Final judgment will be entered by separate order.

SIGNED on January 20, 2006, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge